**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTHONY DEATON,

          Plaintiff,

              vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 1:10-cv-461

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Anthony Deaton filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On September 25, 2002, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of March 20, 2001, due to mental problems, major back problems, and a herniated disk. (Tr. 71-73, 91). He was 36 years old at the time of his alleged disability and 41 years old at the time of the ALJ's decision. (Tr. 539). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 50, 52-58), he requested a hearing *de novo*

before an Administrative Law Judge ("ALJ").  (Tr. 62).  On October 5, 2005, an evidentiary hearing was held in Dayton, Ohio, at which Plaintiff was represented by counsel.  (Tr. 748-776).  At the hearing, ALJ Melvin A. Padilla ("ALJ Padilla"), heard testimony from Plaintiff and impartial vocational experts, William Kiger ("VE Kiger") and Mark Pinte ("VE Pinte").  (*Id.*).  On June 28, 2006, ALJ Padilla entered his decision denying Plaintiff's DIB and SSI applications.  (Tr. 518-540).  However, on December 14, 2007, the Appeals Council remanded the matter to the ALJ to consider whether Plaintiff's drug addiction was a contributing factor material to the finding of disability.  (Tr. 541).  The Appeals Counsel asserted that ALJ Padilla's decision was unclear as to the severity of Plaintiff's substance abuse disorder.  (*Id.*).

As a result of the Appeals Council's remand, a second evidentiary hearing was held before ALJ Padilla on March 24, 2008, at which Plaintiff was represented by counsel.  (Tr. 777-822).  At the hearing, ALJ Padilla followed the Appeals Council's remand order and heard testimony again from Plaintiff.  ALJ Padilla also heard testimony from Mary E. Buban, Psy.D., an independent medical expert ("ME Buban") and Suman Srinivasan, an impartial vocational expert ("VE Srinivasan").  (*Id.*).  On November 3, 2008, ALJ Padilla entered his second decision denying Plaintiff's DIB and SSI applications, finding that Plaintiff was disabled from his alleged disability onset date until July 19, 2006, but also finding that Plaintiff's substance abuse was a material contributing factor to his disability.  (Tr. 20-32).  ALJ Padilla determined that, once Plaintiff became sober on July 19, 2006, he was capable of a reduced range of light work but could perform a significant number of jobs in the regional economy.  (*Id.*).  On

May 17, 2010, the Appeals Council denied his second request for review.[1] (Tr. 9-11). Therefore, ALJ Padilla's decision stands as the Defendant's final determination.

ALJ Padilla's "Findings," which represent the rationale of the decision, were as follows:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2.   The claimant has not engaged in substantial gainful activity since March 20, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3.   The claimant has the following "severe" impairments: depressive disorder; history of polysubstance abuse (drug of choice crack cocaine) in reported remission since mid July 2006; lumbar degenerative disc disease; right hip necrosis; and bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

       ……………………

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

       ……………………

5.   <u>Residual functional capacity.</u>   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift up to twenty pounds occasionally and ten pounds occasionally; he must have the option to alternate positions every fifteen to twenty minutes; he must avoid overhead reaching; repetitive grasping and reaching; climbing ladders, scaffolds or working at unprotected heights; balancing or crawling; more than occasional pushing/pulling, climbing stairs, stooping, or crouching; and he is limited to simple repetitive tasks; low stress jobs with no dealing with the public, minimal and superficial contacts with supervisors and coworkers, including no teamwork, no production quotas or fast paced jobs; and no jobs in contact with drugs as a part of his job duties. Therefore, he is limited to a reduced

---

[1] The Appeals Council noted that they, "found no reason under their rules to review the Administrative Law Judge's decision, dated November 3, 2008." (*See* Tr. 9).

range of light work.

……………………

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

……………………

7.      The claimant was born on March 6, 1965.  He is forty three years old and considered a "younger individual" (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

……………………

10.     Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform since July 19, 2006 (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant was under a "disability," as defined in the Social Security Act, from March 20, 2001, the alleged onset date, to July 19, 2006, due to depression and substance abuse meeting or equaling listing-level severity. However, substance abuse was a contributing factor material to such finding so no benefits can be awarded. Therefore, this is an unfavorable decision.  Since July 19, 2006, there was medical improvement once he stopped using drugs, particularly crack cocaine, and there is a significant number of jobs in the economy that he could perform.  Therefore, he has not been disabled from July 19, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-32).  Thus, ALJ Padilla concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.  (*Id.*).

On appeal to this Court, Plaintiff maintains that ALJ Padilla erred by: 1) presenting a hypothetical question to the vocational expert that did not include all the

limitations he ultimately found; and 2) by improperly assessing Plaintiff's residual functional capacity ("RFC").

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the Court should consider the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.

… The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. §423(d)(1)(A).  In this case, Plaintiff alleges that the identified errors at the fourth and fifth steps of the sequential analysis require this Court to reverse the Commissioner's decision.

## B.  Residual Functional Capacity

Plaintiff complains that ALJ Padilla's finding of residual functional capacity ("RFC") is not supported by substantial evidence because ALJ Padilla failed to incorporate into said RFC, the opinions of Plaintiff's treating and examining physicians, obesity, and mental limitations.  (Doc. 11 at 13).

### 1.  The ALJ's Rejection of Treating and Examining Physicians

Plaintiff first asserts that ALJ Padilla did not rely on any specific "treating physicians" opinion in reaching his conclusions concerning Plaintiff's RFC but instead merely claimed that, "The physical restrictions are based on the nature of the claimant's impairments and after evaluation of the evidence as a whole."  (Doc. 11 at 14).  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is *well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.* (emphasis added).  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection."  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *See also* 20 C.F.R. §1527(d)(2).  Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-231 (6th Cir. 1990) (affirming finding of non-

disability despite herniated disc and degenerative arthritis in the spine).

In this case, contrary to Plaintiff's allegations, ALJ Padilla specified that he did rely on Plaintiff's treating physicians in determining Plaintiff's RFC and gave controlling weight to only those opinions that were supported by objective medical evidence.[2] (Tr. 20, 531). ALJ Padilla relied on the medical findings of Gary Ray, M.D. ("Dr. Ray"), Robert E. Norris, M.D. ("Dr. Norris"), Scott West, D.O. ("Dr. West"), and Thomas S. Berger, M.D. ("Dr. Berger"), as they were consistent with the objective medical evidence in Plaintiff's record.

On August 28, 2003, Plaintiff was evaluated by Dr. Ray on behalf of the State Agency. (Tr. 282-289, 446-457). Dr. Ray noted that, although Plaintiff weighed 288 pounds, he was able to: sit and stand independently, walk with a normal gait, get on and off the examination table without difficulty, and reach the 50 percent squat position (Tr. 283). Dr. Ray also noted that Plaintiff had severe pain behavior "all over" with just a slight "touching of the skin in the neck and back area." (Tr. 283-284). However, Dr. Ray indicated that a lumbar spine x-ray revealed no abnormalities. (Tr. 284). As a result, Dr. Ray concluded that based on Plaintiff's history, physical examination, review of his medical records, and x-ray study, Plaintiff had a cervical, thoracic, and lumbosacral sprain/strain that was likely related to Plaintiff's diabetes. (*Id.*). In regards to Plaintiff's ability to perform work-related physical activities, Dr. Ray found that Plaintiff was able to sit for up to an hour at a time, stand for up to half an hour at a time, lift and carry up to 10 pounds, handle objects on an occasional basis and should avoid forceful gripping activities. (*Id.*). Dr. Ray also reported that Plaintiff can perform partial bending,

---

[2] ALJ Padilla found no evidence had been submitted to suggest that Plaintiff's condition had worsened in any way since his prior 2006 decision and adopted those findings. (Tr. 24). Therefore, ALJ Padilla's discussion of Plaintiff's physical impairments occurred in ALJ Padilla's first decision.

stooping, and squatting activities, but that he should avoid kneeling, crawling, climbing, and overhead reaching activities.  (*Id.*).  The Court notes that ALJ Padilla also indicates in his RFC that Plaintiff had good strength, was not experiencing spasms, and had only mildly decreased ability to grasp and manipulate during the examination.

ALJ Padilla also relied on the findings of Dr. Norris, a state agency physician who reviewed Plaintiff's medical record, including Dr. Ray's examination findings, and provided a physical RFC assessment.  (Tr. 290-294, 531).  On September 15, 2003, Dr. Norris reported that Plaintiff could perform light work as long as he could periodically alternate sitting and standing to relieve pain or discomfort.  (Tr. 291).  Dr. Norris also reported that Plaintiff could not perform repetitive grasping and reaching.  (Tr. 292).  Dr. Norris concluded that Plaintiff could only occasionally stoop or crouch and should never balance.  (*Id.*).

ALJ Padilla also referred to Dr. West's and Dr. Berger's neurological examination findings when determining Plaintiff's physical RFC.  (Tr. 247-248, 532-533).  Despite tenderness and lower back pain, ALJ Padilla noted Dr. West's examination showed that Plaintiff had a full range of motion in his neck, no unilateral sensory deficits, and was capable of both heel and toe standing.  (*Id.*).  Dr. West diagnosed Plaintiff with a herniated lumbar disc, facet joint hypertrophy, and a "very small" herniated disc, but would not recommend surgery for Plaintiff.  (Tr. 248).  ALJ Padilla also noted that Dr. Berger's opinion on September 14, 2004, was largely consistent with his RFC finding (Tr. 533).  Dr. Berger determined that Plaintiff was physically capable of carrying 25 pounds occasionally and 20 pounds frequently.  (Tr. 374).  Dr. Berger stated that Plaintiff could stand for three to four hours in a workday, one hour without interruption,

had limited ability to push and pull, and should perform postural activities only occasionally.  (Tr. 374-375).

Given the above, ALJ Padilla relied on substantial and objective evidence in evaluating Plaintiff's RFC.  Plaintiff argues that he was more physically limited than provided for in ALJ Padilla's RFC and has provided certain opinions from treating and examining physicians in the record.  (Doc. 11 at 14).  Plaintiff alleges that ALJ Padilla did not rely on any one medical opinion in determining Plaintiff's RFC.  However, the Court notes that Plaintiff fails to acknowledge that ALJ Padilla's RFC is very similar to Dr. Norris' physical RFC assessment, and also includes elements from Dr. Ray's, Dr. West's, and Dr. Berger's assessments.  Plaintiff's argument merely includes a list of opinions in the record, but makes no attempt to identify which opinions of record were allegedly improperly evaluated.  (*Id.*).  After further examination, the Court finds that ALJ Padilla provided a proper evaluation of the opinions in the record under the regulations, including his rejection of Plaintiff's multiple treatment providers that did not base their opinions on the objective medical evidence.

For example, ALJ Padilla rejected the opinion of Elizabeth Dorriott, M.D. ("Dr. Dorriott"), Plaintiff's family physician, because her assessment that Plaintiff had severe limitations was "grossly out of proportion with the record."  (Tr. 279, 533).  Dr. Dorriott opined that Plaintiff could stand and walk for less than thirty minutes, lift a gallon of milk or less, had diminished grasping on both sides, was unable to bend or stoop, and could sit for less than thirty minutes.  (Tr. 279).  However, Dr. Dorriott's assessment contained no indication that Plaintiff's condition prevented him from working.  In terms of daily activities, Dr. Dorriott felt that Plaintiff was unable to live alone due to pain, was

depressed due to an inability to do things; and had only 20 minutes or less of memory. (*Id.*).  In rejecting Dr. Dorriott's opinion, ALJ Padilla noted that Dr. Dorriott provided no treatment or medical records to support her opinion.  (Tr. 533).  In addition, ALJ Padilla also noted that Plaintiff had engaged in drug seeking behavior during his treatment with Dr. Dorriott.  (*Id*).

In addition, ALJ Padilla did not afford Dr. Dorriott's opinion of Plaintiff's RFC greater weight than Dr. Ray's, Dr. Norris', Dr. West's, or Dr. Berger's because Dr. Dorriott is not a specialist in orthopedic or neurological disorders.  ALJ Padilla also noted the lack of a close treatment relationship between Dr. Dorriott and Plaintiff.  (Tr. 533).  Therefore, based on the above, ALJ Padilla provided valid reasons why Dr. Dorriott's opinion was not entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight.").  ALJ Padilla discussed Dr. Dorriott's opinion and concluded that it was "not accepted as substantial evidence."  (Tr. 533).  As a result, ALJ Padilla properly evaluated Dr. Dorriott's opinion under the factors outlined in the regulations by looking at the nature of Dr. Dorriott's treatment relationship with Plaintiff and finding that the opinion lacked support and was inconsistent with other evidence.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4).

ALJ Padilla also provided a similar discussion of Plaintiff's "treating physician," George Kaiser, D.O. ("Dr. Kaiser").  On November 4, 2004, George Kaiser, D.O. ("Dr.

Kaiser") completed a "Medical Assessment of Ability to Do Work-Related Activities" on Plaintiff's behalf.  (Tr. 383-387).  On that form, Dr. Kaiser reported that Plaintiff could lift 5-10 pounds occasionally and less than five pounds frequently.  (Tr. 384).  Dr. Kaiser opined that Plaintiff could stand/walk or sit for one to two hours.  (*Id.*).  Dr. Kaiser reported that Plaintiff was limited in his ability to reach, push/pull, and engage in postural activities.  (Tr. 385).  Dr. Kaiser also noted that Plaintiff "must avoid stressful situations," and concluded that Plaintiff could not even do sedentary work.  (Tr. 386-387).

In rejecting Dr. Kaiser's opinion ALJ Padilla found that Dr. Kaiser was not a treating medical source.  The Social Security regulation pertinent to determining whether a physician may be considered a "treating physician" states, "the ALJ must consider the examining relationship between the medical source and claimant and the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship."  20 C.F.R. § 404.1527(d)(2).  In Plaintiff's medical records there is no evidence that Dr. Kaiser ever treated Plaintiff beyond his one appointment on November 4, 2004.  (*See* Tr. 436-439, 459-477).  The record does contain treatment notes from the Middleton Family Practice dated November 2004 to February 2005 and from April 2005 to October 2005, but as ALJ Padilla noted, Plaintiff primarily treated with Dr. Paul Kirila.  (Tr. 533).  Thus, as ALJ Padilla properly asserted, Dr. Kaiser does not meet the regulatory definition of a treating source.  (*Id.*).  In addition, Dr. Kaiser did not provide any detailed, objective findings to support his opinion.  *See* 20 C.F.R. §404. 1527(d)(3) ("the better an explanation a source provides for an opinion, the more weight we will give to that opinion.").  Dr. Kaiser simply checked lines

indicating that Plaintiff's ability to perform certain work-related activities with regularity was markedly limited. (Tr. 383-387).

The Court also notes that ALJ Padilla properly rejected Dr. Ray's May 16, 2005 evaluation of Plaintiff. ALJ Padilla did not accept Dr. Ray's opinion that Plaintiff could lift no more than 10 pounds. (Tr. 351). In rejecting Dr. Ray's 2005 opinion, ALJ Padilla partially relied on Dr. Norris' evaluation of Dr. Ray's opinion, in which Dr. Norris concluded that Plaintiff's pain response during Dr. Ray's evaluation was not supported by objective evidence and was only partially credible. (Tr. 294, 531). ALJ Padilla determined that Dr. Ray relied on Plaintiff's subjective allegations, which, according to Dr. Norris, were not substantiated by the record, including a lumbar spine x-ray which showed no abnormalities. (*Id.*). *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). ALJ Padilla also found that an EMG did not show any evidence of the peripheral neuropathy that Dr. Ray referred to in his examination. (Tr. 320, 531). ALJ Padilla thoroughly evaluated Dr. Ray's 2005 assessment of Plaintiff and provided good reasons for rejecting it. Thus, Plaintiff has failed to establish reversible error.

The Court has determined that ALJ Padilla's RFC finding was reasonable and supported by substantial evidence in the record, including objective medical evidence and treating physician's opinions. The Court finds that ALJ Padilla recognized that Plaintiff had several severe impairments which caused numerous work related limitations and as a result, ALJ Padilla limited Plaintiff to a significantly reduced range of light work.[3] In establishing Plaintiff's RFC, ALJ Padilla rejected or gave reduced weight

---

[3] ALJ Padilla found Plaintiff could perform work with the following limitations: lift up to 20 pounds occasionally and 10 pounds occasionally; allow the option to alternate positions every 15-20 minutes; no overhead reaching, repetitive grasping and reaching, climbing ladders/scaffolds, working at unprotected heights, balancing, or crawling; and occasional pushing/pulling, climbing stairs, stooping, and crouching

13

to some medical opinions contained in the record but provided well-supported reasons

for doing so, as required by the Agency's regulations.  *See* 20 C.F.R.  §§ 404.1527(d),

416.927(d).  Therefore, for the reasons stated above, Plaintiff's argument does not have

merit.

### 2.  Obesity

Plaintiff next complains that ALJ Padilla violated Social Security Ruling 02-01p

("SSR 02-01p") for failing to consider the effect of Plaintiff's obesity when making his

RFC finding.  (Doc. 11 at 17).  SSR 02-01p sets forth the SSA's policy used in

evaluating obesity when completing the sequential benefits analysis.  SSR 02-01p

provides that:

> [O]besity may be considered severe alone or in combination with another
> medically determinable impairment…the SSA will do an individualized
> assessment of the impact of obesity on an individual's functioning when
> deciding whether the impairment is severe…a claimant's obesity must be
> considered not only at step two of the Commissioner's five step evaluation
> process, but also at the subsequent steps.

*See* SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).  *See also* 20 C.F.R. §404.1523

(explaining that if the SSA finds "a medically severe combination of impairments, the

combined impact of the impairments will be considered throughout the disability

determination process.").  Even though obesity is to be considered during the disability

determination, it "may or may not increase the severity or functional limitations of the

other impairment and should be evaluated on a case by case basis.  Obesity "is 'not

severe' only if it is a slight abnormality (or combination of slight abnormalities) that has

no more than a minimal effect on the individual's ability to do basic work activities."

---

(Tr. 24).  Plaintiff was further limited to simple repetitive tasks; low stress jobs with no dealing with the public, minimal and superficial contact with coworkers and supervisors (including no teamwork), no production quotas or fast-paced jobs, and no contact with drugs as part of the job (Tr. 24).  Therefore, ALJ Padilla limited Plaintiff to a reduced range of <u>light</u> work.  (Tr. 24).

SSR 02-01p, 2000 WL 628049.

Although ALJ Padilla did not consider Plaintiff's obesity to be a severe impairment, he did acknowledge Dr. Ray's objective findings that Plaintiff was 5'9'' tall and weighed 288 pounds at the time of the examination and that obesity was a relevant diagnosis in Plaintiff's claim.   (Tr. 283, 531).   However, the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.   *See McKenzie v. Commissioner of Social Security,* No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen,* 853 F.2d 488, 489 (6th Cir. 1988).   None of the medical experts of record reported that Plaintiff's obesity affected his abilities to function.   Specifically, Plaintiff never alleged at any time to his treating or consulting physicians that his obesity resulted in work limitations.

Contrary to Plaintiff's claim, ALJ Padilla also considered Plaintiff's non-severe impairments including obesity, throughout the remaining steps of the sequential benefits analysis.   (Tr. at 12-22).   Once an ALJ determines that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the sequential evaluation process and consider all impairments, including those which were not found to be "severe" at step two.   *Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987); *See* 20 C.F.R. §§ 404.1520, 416.920.   In this case, ALJ Padilla found that Plaintiff had severe impairments, including: depressive disorder; history of polysubstance abuse (drug of choice crack cocaine) in reported remission since July 2006; lumbar degenerative disc disease; right hip necrosis; and bilateral carpal tunnel syndrome, and therefore, continues the evaluation process after step

three.  (Tr. 17-33).

At each of the subsequent steps, ALJ Padilla considered Plaintiff's nonsevere impairments, including obesity.  (*Id.*).  For example, in ALJ Padilla's first unfavorable decision, he cited to Plaintiff's medical record at Step 3 in determining that Plaintiff's Diabetes, a condition relating to his obesity, does not rise to the level of a severe impairment.  Specifically, ALJ Padilla stated that, "the claimant had diabetic education, including diet evaluation, in August to September 2002, for Type 2 diabetes mellitus (14F).  Insulin was later prescribed and there is no evidence of diabetic complications." (Tr. at 530).  Moreover, ALJ Padilla expressly considered Plaintiff's obesity in his determination that Plaintiff did not have any impairment or combination of impairments that met or equaled a listed impairment.  (Tr. 23).  ALJ Padilla also considered all of Plaintiff's documented symptoms and limitations, regardless of whether they were obesity-related, in assessing Plaintiff's RFC.  (Tr. 24-30).  ALJ Padilla thus properly considered Plaintiff's diagnosis of obesity in his analysis and thus, satisfied the requirements of SSR 02-01p.  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### 3. Plaintiff's Mental Limitations

Plaintiff next complains that ALJ Padilla erred in formulating his mental RFC. Plaintiff asserts that, regardless of achieving sobriety in July 2006, he is mentally more limited than found by ALJ Padilla.  (Doc. 11 at 18).  Plaintiff acknowledges that prior to achieving sobriety his episodic substance use made his underlying mental impairments difficult to assess; however, Plaintiff alleges that he continues to suffer from a severe major depressive and underlying personality disorder.  (*Id.*).  Plaintiff argues that ALJ

Padilla improperly weighed the medical evidence by relying on the opinions of ME Buban over those of Plaintiff's "treating psychiatrist" Jeffrey Bishop, M.D. ("Dr. Bishop"). (*Id.*).

On February 14, 2008, Dr. Bishop completed an assessment of Plaintiff's ability to function in the workplace. (Tr. 663-666). Dr. Bishop indicated that Plaintiff had poor or no ability to deal with the public or work stresses. (Tr. 663). Dr. Bishop opined that Plaintiff had only a fair ability to use judgment, interact with supervisors, function independently, maintain attention/concentration, or demonstrate responsibility. (Tr. 663-665). Dr. Bishop noted that:

> Due to client's high level of anxiety, he may not function well in public. Client may be able to perform simple tasks and complete these without supervision. Client has difficulties in dealing with people with authority, so he needs supervisors that are understanding of his condition and will let him work at his own pace and skill level.

(Tr. 665). However, Dr. Bishop also added that, "As long as Mr. Deaton continues with his medication, he may be able to work part-time in a low stress environment." (*Id.*). The Court notes that based on this assessment, contrary to Plaintiff's allegations, ALJ Padilla did not in fact completely reject Dr. Bishop's opinions. Although ALJ Padilla did not find objective medical evidence to afford Dr. Bishop's opinions controlling weight, ALJ Padilla also agreed with Dr. Bishop that, with proper treatment and continued abstinence from crack cocaine, Plaintiff could become an active member of society and work in a low stress environment. (Tr. 530, 537).

In affording Dr. Bishop's opinions less than controlling weight, ALJ Padilla also correctly noted that the treating physician rule did not apply to Dr. Bishop. (Tr. 29). ALJ Padilla pointed out that because Dr. Bishop, a psychologist, examined Plaintiff on only

two occasions, it could be reasonably concluded that he had not seen Plaintiff with the frequency necessary to establish a treating relationship. (*See* Tr. 638-640, 644-645). *See* 20 C.F.R. §404.1502 (defining treating source as a physician who has had an "ongoing treatment relationship with you"). Perhaps a treating relationship developed thereafter between this physician and Plaintiff, but it had not at the time Dr. Bishop provided his opinion. *See Daniels v. Comm'r of Soc. Sec.,* 152 Fed. Appx. 485 (6th Cir. 2005) ("The ALJ's failure to specifically address Dr. Pinson's opinion, despite casually referring to her as a treating source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician."). Further, ALJ Padilla reasonably determined that Dr. Bishop's opinion could not be given deference because he did not "discuss [Plaintiff's] impairment in any detail, his visit notes were minimal at best, and he nowhere provided support for limiting [Plaintiff] to part time work now that he has been off substances for some time." (Tr. 29). 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). Given ALJ Padilla's proper determination to afford Dr. Bishop's opinions reduced weight, ALJ Padilla relied instead on the testimony of ME Buban. ME Buban reviewed and discussed Plaintiff's treatment notes and physician opinions at the administrative hearing. In *Richardson v. Perales,* 402 U.S. 389, 408 (1971), the Supreme Court held that it is acceptable for the ALJ to use a medical expert, because the expert's primary duty is to make complex medical cases understandable to the layman examiner. Moreover, the medical expert can offer his own opinion regarding the claimant's condition. *See* 20 C.F.R. 416.927(f)(2). The ALJ can properly rely on the testimony of a non-examining medical expert in order to make sense of the record. *See Buxton v. Halter,* 246 F.3d 762, 775 (6th Cir. 2001). In

addition, an ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala,* 40 F.3d 789, 794-795 (6th Cir. 1994); *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306, 1308-1309 (6th Cir. 2001).

Notably, ME Buban testified that Plaintiff suffered from a mild to moderate depressive disorder that became severe with drug use. (Tr. 804). ME Buban also observed that all of Plaintiff's prior hospitalizations were associated with his use of crack cocaine. (Tr. 798-799). For example, ME Buban noted that although Plaintiff was hospitalized once or twice and taken to the emergency room a few times for depression/suicidal ideation, each of these times substance abuse was involved. (*Id.*). ME Buban also acknowledged that essentially, Plaintiff was only threatening suicide to get the attention of his wife, who left the martial residence on multiple occasions due to Plaintiff's crack-cocaine addiction. Since being released from inpatient treatment, ME Buban testified that Plaintiff did not meet any Listing. (Tr. 805). Prior to 2006, ME Buban testified that Plaintiff's impairment met Listing 12.09 and 12.04. (*Id.*). According to ME Buban, Plaintiff would be restricted to only simple and detailed tasks, independent work, a low stress environment, not dealing with the public, occasional contact with coworkers, and no strict production quotas. (*Id.*). The record shows that ME Buban considered all of the pertinent medical evidence over the relevant time period in conjunction with Plaintiff's testimony. (Tr. 798-812). ME Buban specifically addressed Plaintiff's drug abuse issue and Dr. Bishop's opinion. (*Id.*). ME Buban's analysis, according to ALJ Padilla, supported the finding "that the claimant was not disabled because the evidence did not show substantial mental difficulties apart from

substance abuse (acute crisis episodes were associated with substances and some degree of manipulating his wife to stay married to him).

Based on ME Buban's testimony, ALJ Padilla properly found that the substance abuse was of such severity that it exacerbated a mild to moderate depressive disorder to a major depressive disorder. (Tr. 28). ALJ Padilla also properly concluded that Plaintiff's substance abuse was clearly a contributing factor material to such finding and benefits cannot be awarded. (*Id.*). The Court finds that ALJ Padilla's reliance on ME Buban's opinion was warranted because she was the only medical source who reviewed the entire mental health record and also considered Plaintiff's testimony during the second administrative hearing. (Tr. 798-812). ALJ Padilla thus correctly gave ME Buban's opinion significant weight and determined that Plaintiff's limitations were in the mild to moderate range. *See* 20 C.F.R. §404.1527(d)(3)("We will evaluate the degree to which these opinions of treating and other examining sources."). Therefore, for the reasons stated above, Plaintiff's argument lacks merit.

### C.  Hypothetical Question to the Vocational Expert

Plaintiff also contends that, as a result of ALJ Padilla's improper RFC finding, the jobs identified by VE Srinivasan did not properly reflect Plaintiff's accurate abilities. (Doc. 11 at 12). However, this contention lacks merit as the hypothetical questions ALJ Padilla asked VE Srinivasan, and the corresponding answers he relied on, were adequate and proper because they included Plaintiff's substantial impairments and limitations. (Tr. 31-32). The hypothetical questions took into consideration the impairments Plaintiff suffered from (i.e., depressive disorder; history of polysubstance abuse; lumbar degenerative disc disease; right hip necrosis; and bilateral carpal tunnel

syndrome), and the medical restrictions that were supported by the record as a whole. (*Id.*).

The ALJ's function is to decide Plaintiff's restrictions and how they affect his residual functional capacity. *Maziarz v. Secretary of Health and Human Services,* 837 F.2d at 247. A hypothetical question that an ALJ poses to a vocational expert must only include those limitations that are supported by the record for the relevant period. *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 780 (6th Cir. 1987). In arguing that ALJ Padilla asked VE Srinivasan deficient hypothetical questions, Plaintiff claims that he failed to take into consideration the following: 1) the opinions of Plaintiff's treating and examining physicians; 2) Plaintiff's obesity; and 3) Plaintiff's mental limitations. However, as previously discussed, ALJ Padilla addressed each of the issues thoroughly in his multiple decisions and questions to the various vocational experts that later testified, including VE Srinivasan. Specifically, ALJ Padilla included only those limitations in his hypothetical questions to VE Srinivasan that were supported by objective medical evidence in the record. (Tr. 31-32).

Plaintiff has not shown that ALJ Padilla's assessment of his RFC was based on legal error or unsupported by substantial evidence. As a result, VE Srinivasan's testimony regarding a hypothetical person with these limitations and abilities, which incorporated ALJ Padilla's RFC, constituted substantial evidence to support his conclusion at Step 5 of the sequential analysis. (Tr. 24-30). Substantial evidence may be produced through reliance on the testimony of a vocational expert. *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley,* 820 F.2d at 779). Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

_s/Stephanie K. Bowman_____
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTHONY DEATON,

        Plaintiff,

        vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:10-cv-461

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).